1

2

3

4

5

6

7              UNITED STATES DISTRICT COURT

8               EASTERN DISTRICT OF CALIFORNIA

9

10

SANTIAGO VENEGAS,              ) 1:11-cv—01381-SKO-HC

11                             )
              Petitioner,      ) ORDER DISMISSING THE PETITION
12                             ) WITH LEAVE TO FILE AN AMENDED
                               ) PETITION NO LATER THAN THIRTY
13     v.                      ) (30) DAYS AFTER THE DATE OF
                               ) SERVICE OF THIS ORDER (DOC. 1)
14 GARY SWATHOUT,              )
                               ) ORDER DIRECTING THE CLERK TO SEND
15            Respondent.      ) TO PETITIONER A FORM PETITION
                               ) PURSUANT TO § 2254
16 _____)

17

18     Petitioner is a state prisoner proceeding pro se and in

forma pauperis with a petition pursuant to 28 U.S.C. § 2254.  The
19

matter has been referred to the Magistrate Judge pursuant to 28
20

U.S.C. § 636(b)(1) and Local Rules 302 and 303.  Pending before
21

the Court is the petition, which was filed on August 19, 2011.
22

     I.  Screening the Petition
23

     Rule 4 of the Rules Governing § 2254 Cases in the United
24

States District Courts (Habeas Rules) requires the Court to make
25

a preliminary review of each petition for writ of habeas corpus.
26

The Court must summarily dismiss a petition "[i]f it plainly
27

appears from the petition and any attached exhibits that the
28

1

1  petitioner is not entitled to relief in the district court...."
2  Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir.
3  1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir.
4  1990).  Habeas Rule 2(c) requires that a petition 1) specify all
5  grounds of relief available to the Petitioner; 2) state the facts
6  supporting each ground; and 3) state the relief requested.
7  Notice pleading is not sufficient; rather, the petition must
8  state facts that point to a real possibility of constitutional
9  error.  Rule 4, Advisory Committee Notes, 1976 Adoption;
10  O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v.
11  Allison, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition
12  that are vague, conclusory, or palpably incredible are subject to
13  summary dismissal.  Hendricks v. Vasquez, 908 F.2d 490, 491 (9th
14  Cir. 1990).

15      Further, the Court may dismiss a petition for writ of habeas
16  corpus either on its own motion under Habeas Rule 4, pursuant to
17  the respondent's motion to dismiss, or after an answer to the
18  petition has been filed.  Advisory Committee Notes to Habeas Rule
19  8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43
20  (9th Cir. 2001).

21      Here, Petitioner alleges that he is an inmate of the Avenal
22  State Prison (ASP) serving a sentence of fifteen (15) years to
23  life plus seven (7) years for a conviction of second degree
24  murder sustained in 1982 in the Superior Court for the County of
25  San Francisco.  He challenges the denial of parole by
26  California's Board of Parole Hearings (BPH), which appears to
27  have been determined after a hearing held on April 6, 2010.
28  (Pet., Ex. A, doc. 1, 9.)

1    Petitioner raises the following claims in the petition:  1)

2 the BPH violated Petitioner's right to due process of law by

3 relying on the commitment offense because the commitment offense

4 lacked any predictable value; 2) the BPH violated Petitioner's

5 right to due process of law by relying on a psychological

6 evaluation of Petitioner and on Petitioner's lack of insight; 3)

7 the BPH violated Petitioner's rights under Apprendi v. New Jersey

8 and Blakely v. Washington by relying on the psychological

9 evaluation and factors relevant to parole suitability that were

10 not presented to a jury and found true beyond a reasonable doubt;

11 and 4) the BPH violated Petitioner's First Amendment rights by

12 ordering him to attend Alcoholics Anonymous (AA) or Narcotics

13 Anonymous (NA), which are religiously based programs.  (Pet. 4-

14 5.)

15    II.   Exhaustion of State Court Remedies

16    Because the petition was filed after April 24, 1996, the

17 effective date of the Antiterrorism and Effective Death Penalty

18 Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh

19 v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008

20 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

21    A petitioner who is in state custody and wishes to challenge

22 collaterally a conviction by a petition for writ of habeas corpus

23 must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).

24 The exhaustion doctrine is based on comity to the state court and

25 gives the state court the initial opportunity to correct the

26 state's alleged constitutional deprivations.  Coleman v.

27 Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509,

28 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1162-63 (9th Cir.

3

1   1988).

2        A petitioner can satisfy the exhaustion requirement by

3   providing the highest state court with the necessary jurisdiction

4   a full and fair opportunity to consider each claim before

5   presenting it to the federal court, and demonstrating that no

6   state remedy remains available.  Picard v. Connor, 404 U.S. 270,

7   275-76 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir.

8   1996).  A federal court will find that the highest state court

9   was given a full and fair opportunity to hear a claim if the

10  petitioner has presented the highest state court with the claim's

11  factual and legal basis.  Duncan v. Henry, 513 U.S. 364, 365

12  (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 9-10

13  (1992), superceded by statute as stated in Williams v. Taylor,

14  529 U.S. 362 (2000) (factual basis).

15       Additionally, the petitioner must have specifically told the

16  state court that he was raising a federal constitutional claim.

17  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669

18  (9th Cir. 2000), amended, 247 F.3d 904 (9th Cir. 2001); Hiivala

19  v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Keating v. Hood,

20  133 F.3d 1240, 1241 (9th Cir. 1998).  In Duncan, the United

21  States Supreme Court reiterated the rule as follows:

22       In Picard v. Connor, 404 U.S. 270, 275...(1971),
         we said that exhaustion of state remedies requires that
23       petitioners "fairly presen[t]" federal claims to the
         state courts in order to give the State the
24       "'opportunity to pass upon and correct' alleged
         violations of the prisoners' federal rights" (some
25       internal quotation marks omitted). If state courts are
         to be given the opportunity to correct alleged violations
26       of prisoners' federal rights, they must surely be
         alerted to the fact that the prisoners are asserting
27       claims under the United States Constitution. If a
         habeas petitioner wishes to claim that an evidentiary
28       ruling at a state court trial denied him the due

                                4

process of law guaranteed by the Fourteenth Amendment,
he must say so, not only in federal court, but in state
court.

Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule

further in Lyons v. Crawford, 232 F.3d 666, 668-69 (9th Cir.

2000), as amended by Lyons v. Crawford, 247 F.3d 904, 904-05 (9th

Cir. 2001), stating:

> Our rule is that a state prisoner has not "fairly
> presented" (and thus exhausted) his federal claims
> in state court unless he specifically indicated to
> that court that those claims were based on federal law.
> See, Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir.
> 2000). Since the Supreme Court's decision in Duncan,
> this court has held that the petitioner must make the
> federal basis of the claim explicit either by citing
> federal law or the decisions of federal courts, even
> if the federal basis is "self-evident," Gatlin v. Madding,
> 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v.
> Harless, 459 U.S. 4, 7... (1982), or the underlying
> claim would be decided under state law on the same
> considerations that would control resolution of the claim
> on federal grounds, see, e.g., Hiivala v. Wood, 195
> F.3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon,
> 88 F.3d 828, 830-31 (9th Cir. 1996); Crotts, 73 F.3d
> at 865.
> ...
> In Johnson, we explained that the petitioner must alert
> the state court to the fact that the relevant claim is a
> federal one without regard to how similar the state and
> federal standards for reviewing the claim may be or how
> obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-69 (9th Cir. 2000), as

amended by Lyons v. Crawford, 247 F.3d 904, 904-05 (9th Cir.

2001).

Where none of a petitioner's claims has been presented to

the highest state court as required by the exhaustion doctrine,

the Court must dismiss the petition.  Raspberry v. Garcia, 448

F.3d 1150, 1154 (9th Cir. 2006); Jiminez v. Rice, 276 F.3d 478,

481 (9th Cir. 2001).  The authority of a court to hold a mixed

petition in abeyance pending exhaustion of the unexhausted claims

1   has not been extended to petitions that contain no exhausted

2   claims.  Raspberry, 448 F.3d at 1154.

3        Here, Petitioner states that other than a direct appeal from

4   his conviction, he has not filed any petitions or application

5   with respect to the "judgment."  (Pet. 2.)  Petitioner does not

6   allege that he has presented the claims he sets forth in the

7   petition to the highest state court.  However, it is possible

8   that Petitioner has done so because attached to the petition is a

9   copy of an order of the California Supreme Court denying a

10  petition for writ of habeas corpus dated July 20, 2011.  (Pet.

11  7.)  Thus, Petitioner will be given an opportunity to allege

12  exhaustion of state court remedies in an amended petition.

13        III.  Failure to Allege Cognizable Due Process Claims
              Concerning the Evidence before the Board of Parole
14            Hearings

15        A district court may entertain a petition for a writ of

16  habeas corpus by a person in custody pursuant to the judgment of

17  a state court only on the ground that the custody is in violation

18  of the Constitution, laws, or treaties of the United States.  28

19  U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

20  375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13,

21  16 (2010) (per curiam).

22        The Supreme Court has characterized as reasonable the

23  decision of the Court of Appeals for the Ninth Circuit that

24  California law creates a liberty interest in parole protected by

25  the Fourteenth Amendment Due Process Clause, which in turn

26  requires fair procedures with respect to the liberty interest.

27  Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

28        However, the procedures required for a parole determination

6

1  are the minimal requirements set forth in <u>Greenholtz v. Inmates</u>

2  <u>of Neb. Penal and Correctional Complex</u>, 442 U.S. 1, 12 (1979).[1]

3  <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 862.  In <u>Swarthout</u>, the Court

4  rejected inmates' claims that they were denied a liberty interest

5  because there was an absence of "some evidence" to support the

6  decision to deny parole.  The Court stated:

7      There is no right under the Federal Constitution
       to be conditionally released before the expiration of
8      a valid sentence, and the States are under no duty
       to offer parole to their prisoners.  (Citation omitted.)
9      When, however, a State creates a liberty interest,
       the Due Process Clause requires fair procedures for its
10     vindication–and federal courts will review the
       application of those constitutionally required procedures.
11     In the context of parole, we have held that the procedures
       required are minimal.  In <u>Greenholtz</u>, we found
12     that a prisoner subject to a parole statute similar
       to California's received adequate process when he
13     was allowed an opportunity to be heard and was provided
       a statement of the reasons why parole was denied.
14     (Citation omitted.)

15 <u>Swarthout</u>, 131 S.Ct. 859, 862.  The Court concluded that the

16 petitioners had received the process that was due as follows:

17     They were allowed to speak at their parole hearings
       and to contest the evidence against them, were afforded
18     access to their records in advance, and were notified
       as to the reasons why parole was denied....

19

20  _____

21      [1] In <u>Greenholtz</u>, the Court held that a formal hearing is not required
    with respect to a decision concerning granting or denying discretionary
    parole; it is sufficient to permit the inmate to have an opportunity to be
22  heard and to be given a statement of reasons for the decision made.  <u>Id.</u> at
    16.  The decision maker is not required to state the evidence relied upon in
23  coming to the decision.  <u>Id.</u> at 15-16.  The Court reasoned that because there
    is no constitutional or inherent right of a convicted person to be released
24  conditionally before expiration of a valid sentence, the liberty interest in
    discretionary parole is only conditional and thus differs from the liberty
    interest of a parolee.  <u>Id.</u> at 9.  Further, the discretionary decision to
25  release one on parole does not involve restrospective factual determinations,
    as in disciplinary proceedings in prison; instead, it is generally more
26  discretionary and predictive, and thus procedures designed to elicit specific
    facts are unnecessary.  <u>Id.</u> at 13.  In <u>Greenholtz</u>, the Court held that due
27  process was satisfied where the inmate received a statement of reasons for the
    decision and had an effective opportunity to insure that the records being
28  considered were his records, and to present any special considerations
    demonstrating why he was an appropriate candidate for parole.  <u>Id.</u> at 15.

1    　　　　That should have been the beginning and the end of
2    　　　　the federal habeas courts' inquiry into whether
　　　　　　[the petitioners] received due process.

3    Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly

4    noted that California's "some evidence" rule is not a substantive

5    federal requirement, and correct application of California's

6    "some evidence" standard is not required by the Federal Due

7    Process Clause.  Id. at 862-63.

8    　　　　Here, in his first and second claims, which concern the

9    BPH's and state courts' reliance on Petitioner's commitment

10   offense, a psychological evaluation, and Petitioner's lack of

11   insight to find Petitioner unsuitable for release on parole,

12   Petitioner is challenging the application of the "some evidence"

13   rule.  Petitioner thus asks this Court to engage in the very type

14   of analysis foreclosed by Swarthout.  Petitioner does not state

15   facts that point to a real possibility of constitutional error or

16   that otherwise would entitle Petitioner to habeas relief because

17   California's "some evidence" requirement is not a substantive

18   federal requirement.  Review of the record for "some evidence" to

19   support the denial of parole is not within the scope of this

20   Court's habeas review under 28 U.S.C. § 2254.

21   　　　　Petitioner also claims that the BPH's reliance on a lack of

22   insight was improper because it was not a part of California's

23   criteria for unsuitability.  Petitioner relies on state law in

24   connection with this claim.  (Pet. 4.)

25   　　　　To the extent that Petitioner's claim rests on state law, it

26   is not cognizable on federal habeas corpus.  Federal habeas

27   relief is not available to retry a state issue that does not rise

28   to the level of a federal constitutional violation.  Wilson v.

1  Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v.

2  McGuire, 502 U.S. 62, 67-68 (1991).  Alleged errors in the

3  application of state law are not cognizable in federal habeas

4  corpus.  Souch v. Schiavo, 289 F.3d 616, 623 (9th Cir. 2002).

5      Thus, in his first and second claims, Petitioner has failed

6  to allege a claim that is within this Court's scope of review

7  pursuant to 28 U.S.C. § 2254.

8      Although in this respect Petitioner has failed to allege a

9  claim cognizable in this proceeding, a petition for habeas corpus

10  should not be dismissed without leave to amend unless it appears

11  that no tenable claim for relief can be pleaded were such leave

12  granted.  Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

13      Here, Petitioner has not alleged that he failed to receive

14  an opportunity to be heard or a statement of reasons for the

15  BPH's decision.  The full record of the proceedings before the

16  BPH is not before this Court as Petitioner does not attach any

17  transcripts.  It is thus possible that Petitioner could allege a

18  tenable claim for relief pursuant to the Due Process Clause and

19  Swarthout v. Cooke, 131 S.Ct. 859 (2011).

20      Accordingly, although Petitioner's due process claims

21  concerning the evidence must be dismissed, Petitioner will be

22  given an opportunity to file a first amended petition.

23      IV.  Apprendi Claim

24      Petitioner alleges that the BPH violated his rights under

25  Apprendi v. New Jersey and Blakely v. Washington by relying on

26  the psychological evaluation and factors relevant to parole

27  suitability that were not presented to a jury to find beyond a

28  reasonable doubt.  The Court understands the references to be to

9

1  Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v.

2  Washington, 542 U.S. 296 (2004).

3      In Apprendi, the Court held that any fact other than a prior

4  conviction that is necessary to support a sentence exceeding the

5  maximum authorized by the facts established by a plea of guilty

6  or a jury verdict must be admitted by a defendant or proved to a

7  jury beyond a reasonable doubt.  Apprendi v. New Jersey, 530 U.S.

8  466, 490; United States v. Booker, 543 U.S. 220, 244 (2005).  In

9  Blakely v. Washington, 542 U.S. 296, 303 (2004), the Court held

10 that the "statutory maximum for Apprendi purposes is the maximum

11 sentence a judge may impose solely on the basis of the facts

12 reflected in the jury verdict or admitted by the defendant."

13 Blakely, 542 U.S. at 303.  In California, an indeterminate

14 sentence of fifteen years to life is in legal effect a sentence

15 for the maximum term of life, subject only to the power of the

16 parole authority to set a lesser term.  People v. Dyer, 269

17 Cal.App.2d 209, 214 (1969).

18      Here, in denying parole, the BPH did not increase

19 Petitioner's sentence beyond the statutory maximum of life

20 imprisonment for second degree murder.  See, Cal. Pen. Code

21 § 190(a).  Accordingly, Petitioner has not stated facts

22 concerning an Apprendi claim that would entitle him to relief.

23      Further, the Court is mindful of the discretionary and

24 predictive evaluations made by the BPH in considering release of

25 an inmate on parole.  See, Greenholtz v. Inmates of Nebraska

26 Penal and Corr. Complex, 442 U.S. 1, 9-10 (1979).  The Court is

27 not aware of any Supreme Court authority applying the principles

28 of Apprendi to parole proceedings.  The Court notes that

1  Petitioner was not entitled to a jury trial or proof beyond a

2  reasonable doubt in his parole proceedings.  United States v.

3  Knights, 534 U.S. 112, 120 (2001) (no right to jury trial or

4  proof beyond a reasonable doubt in proceedings to revoke

5  probation); United States v. Huerta-Pimentel, 445 F.3d 1220, 1225

6  (9th Cir. 2006) (a judge's finding by a preponderance of the

7  evidence that a defendant violated the conditions of supervised

8  release does not raise a concern regarding the Sixth Amendment);

9  see, Swarthout v. Cooke, 131 S.Ct. at 862.  Instead, Petitioner

10  was entitled to the relatively minimal processes of Greenholtz.

11  Thus, it would not appear that Apprendi, which concerns a right

12  to jury trial and proof beyond a reasonable doubt to a jury,

13  would be applicable to parole proceedings.

14       The Court concludes that Petitioner did not allege facts

15  showing a denial of his right to due process of law by the

16  absence of a jury trial.  It appears unlikely that Petitioner

17  could allege facts that would entitle him to relief pursuant to

18  the reasoning of Apprendi and Blakely.  However, in an abundance

19  of caution, Petitioner will be given leave to amend his petition

20  with respect to this claim.

21       V.  First Amendment Claim

22       Petitioner argues that the BPH violated his First Amendment

23  rights by ordering him to attend AA or NA, which he alleges are

24  religiously based programs.  (Pet. 5.)

25       In Inouye v. Kemna, 504 F.3d 705 (9th Cir. 2007), the court

26  considered whether state parole authorities had qualified

27  immunity in a § 1983 suit by a plaintiff who alleged that as a

28  condition of parole, they required his attendance in drug

11

1   treatment programs (AA and NA) rooted in a regard for a higher

2   power.  In response to the argument of a defendant supervisory

3   parole officer that the law was not clearly established at the

4   time, the court held that the law "was and is very clear,

5   precluding qualified immunity...."  Inouye, 504 F.3d at 711-12.

6   The court found that there had been consistent articulation of

7   the principle that the government may not coerce anyone to

8   support or participate in religion or its exercise, or punish

9   anyone for not so participating.  Id. at 713 (citing Everson v.

10  Board of Education of Ewing Township, 330 U.S. 1 (1947) and Lee

11  v. Weisman, 505 U.S. 577, 587 (1992)).  The court further noted

12  that the basic test for Establishment Clause violations remains

13  that stated in Lemon v. Kurtzman, 403 U.S. 602, 613 (1971),

14  namely, that the government acts 1) have a secular legislative

15  purpose, 2) not have a principal or primary effect which either

16  advances or inhibits religion, and 3) not foster an excessive

17  government entanglement with religion.  Id. at 713 n.7.  The

18  court concluded that recommending revocation of parole for a

19  parolee's failure to attend the programs following an order to

20  participate was unconstitutionally coercive.  Id. at 713-14.  In

21  finding the law clear, the court in Inouye relied not only on

22  lower court decisions but also in part on the decisions of the

23  United States Supreme Court and the absence of any Supreme Court

24  case upholding government-mandated participation in religious

25  activity in any context.  Id. at 715.

26      Further, in Turner v. Hickman, 342 F.Supp.2d 887 (E.D.Cal.

27  2004), a Christian inmate alleged that parole authorities

28  expressly conditioned the plaintiff's eligibility for release on

1  parole in part upon participation in NA.  Id. at 890.  This Court

2  concluded that by repeated application of the "coercion" test set

3  forth in Lee v. Weisman, 505 U.S. 577, 587 (1992), the Supreme

4  Court had made the law clear.  Turner, 342 F.Supp.2d at 894.  By

5  expressly telling the plaintiff he needed to participate in NA to

6  be eligible for parole, the state had acted coercively to require

7  participation in a program in which the evidence showed that

8  belief in "God" was a fundamental requirement of participation.

9  Id. at 895-96.  Accordingly, the First Amendment prohibited the

10  requirement.  Id. at 896-99.  Even if the Court proceeds on the

11  understanding that there is clearly established federal law as

12  determined by the Supreme Court of the United States that

13  prohibits punishing an inmate for failing to participate in AA or

14  NA, or coercing an inmate to participate in NA or AA religious

15  activities, Petitioner is not entitled to relief.

16      Petitioner alleged generally that the BPH violated his

17  rights by requiring him to attend the programs.  (Pet. 5.)

18  Petitioner alleged no other specific facts concerning the conduct

19  of the BPH of which he complains.  However, Petitioner appended

20  to the petition a copy of a decision of the Superior Court of

21  California, County of San Francisco, in which the court denied a

22  petition for writ of habeas corpus filed by Petitioner

23  challenging the denial of parole.  (Pet. 9-19.)  The decision

24  provides as follows:

25      Here the petitioner was not ordered to attend AA
       meetings.  The Board noted his lack of participating in
26      self-help and substance abuse programs, noting that in
       2006 he had participated in a "Zero Tolerance"
27      self-help program.  The Board also commended him
       for having attended AA for a long span, but pointed
28      out that he had not participated since 2003.  The

1   Board said "we commend you for the participation back
2   then and encourage you to re-involved [sic] yourself
    in some type of substance abuse programming and make
3   that an extension of your parole planning."  (Decision
    10:12-15.)

4   (Pet. 18:14-23.)

5       It thus appears from the documents attached to the petition

6   submitted by Petitioner that in denying Petitioner's parole, the

7   BPH did not coerce Petitioner into participation in a religious

8   program.  Instead, the BPH encouraged Petitioner to involve

9   himself anew in "some type of" substance abuse programming in

10  connection with planning for release on parole.  It appears that

11  Petitioner retained some element of choice with respect to the

12  precise program.  No religious programming was required by the

13  BPH.  The element of coercion necessary for a claim under the

14  First Amendment is thus shown by the record to be lacking.  With

15  respect to this claim, Petitioner has failed to state facts

16  showing that he is entitled to relief.

17      However, it is possible that Petitioner could allege a

18  tenable First Amendment claim.  Accordingly, Petitioner will be

19  given an opportunity to amend the petition to allege facts

20  entitling him to relief.

21      VI.  Leave to File a First Amended Petition

22      The instant petition must be dismissed for the reasons

23  stated above.  Petitioner will be given an opportunity to file a

24  first amended petition to cure the deficiencies.  Petitioner is

25  advised that failure to file a petition in compliance with this

26  order (i.e., a completed petition with cognizable federal claims

27  clearly stated and with exhaustion of state remedies clearly

28  stated) within the allotted time will result in a recommendation

14

1  that the petition be dismissed and the action be terminated.

2  Petitioner is advised that the amended petition should be

3  entitled, "First Amended Petition," and it must refer to the case

4  number in this action.  Further, Petitioner is informed that

5  Local Rule 220 provides that unless prior approval to the

6  contrary is obtained from the Court, every pleading as to which

7  an amendment or supplement is permitted shall be retyped or

8  rewritten and filed so that it is complete in itself without

9  reference to the prior or superseded pleading.

10      VII.   Disposition

11      Accordingly, it is ORDERED that:

12      1) The petition for writ of habeas corpus is DISMISSED with

13  leave to amend; and

14      2) Petitioner is GRANTED thirty (30) days from the date of

15  service of this order to file a first amended petition in

16  compliance with this order; and

17      3) The Clerk of the Court is DIRECTED to send Petitioner a

18  form petition pursuant to 28 U.S.C. § 2254; and

19      4)  Petitioner is INFORMED that a failure to comply with

20  this order will be considered to be a failure to comply with an

21  order of the Court pursuant to Local Rule 110 and will result in

22  dismissal of the petition.

23

24  IT IS SO ORDERED.

25  Dated:   August 26, 2011                    /s/ Sheila K. Oberto
                                         UNITED STATES MAGISTRATE JUDGE
26

27

28

15